IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AUGUSTINE GAYLE WEBB,               §
                                    §
              Plaintiff,            §
                                    §
v.                                  §        CIVIL ACTION NO. H-08-3779
                                    §
HOUSTON COMMUNITY COLLEGE           §
SYSTEM,                             §
                                    §
              Defendant.            §


## MEMORANDUM OPINION AND ORDER

Plaintiff, Augustine Gayle Webb, brings this action against defendant, Houston Community College System (HCCS), for employment discrimination based on gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.[1]  Pending before the court are Defendant's Motion for Summary Judgment (Docket Entry No. 20) and Defendant's Objections to Plaintiff's Verification (Docket Entry No. 28).  For the reasons explained below, defendant's motion will be granted and defendant's objections will be overruled.

## I.  Undisputed Facts

Plaintiff worked for HCCS in various, mostly part-time, teaching positions from 1991 to 2009.  From 2001 to February of

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1.

2004 plaintiff held a full-time, administrative position from which HCCS discharged her.[2]    On February 27, 2004, HCCS placed a Personnel Action Form in the plaintiff's personnel file that described her as "ineligible for rehire."[3]   On July 30, 2004, an attorney acting on the plaintiff's behalf wrote to HCCS Chancellor, Dr. Bruce Leslie, requesting a meeting "to discuss the wrongful discharge of Augustine G. Webb."[4]

In the fall of 2005 plaintiff moved to El Paso, Texas, to work for the Internal Revenue Service.[5]   In September of 2006 plaintiff was diagnosed with multiple sclerosis, but plaintiff did not display visible symptoms of MS until 2008.[6]

In 2007 plaintiff returned to HCCS to teach part-time.[7] During 2007 plaintiff applied for various full-time faculty

---

[2]Oral Deposition of Augustine Gayle Bush Webb, Exhibit 1 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20, p. 58.   See also Letter of February 27, 2004, to Ms. Webb from James David Cross, Director, HCCS EEO/Employee Relations, Exhibit 13 attached to Plaintiff's Response to Defendant's Motion for Summary Judgment (Plaintiff's Response), Docket Entry No. 27.

[3]HCCS Personnel Action Form, Exhibit 16 attached to Plaintiff's Response, Docket Entry No. 27.

[4]July 30, 2004, Letter to Dr. Bruce Leslie, Exhibit 18 attached to Plaintiff's Response, Docket Entry No. 27.

[5]Oral Deposition of Augustine Gayle Bush Webb, Exhibit 1 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20, p. 60.

[6]Id. at 16, 25, 27-29.

[7]Id. at 78.

-2-

positions at HCCS, but was not selected.[8]  The full-time faculty positions for which plaintiff applied in 2007 are:  Job 1520 — Instructor of Accounting, on July 10, 2007; Job 1627 — Instructor of Accounting, on October 16, 2007; and Job 1676 — Instructor of Business Administration on November 26, 2007.[9]

On April 15, 2008, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in which she alleged

I.   I have been employed with Houston Community College System since January 1991, as an Adjunct Accountant Instructor.  From July 1, 2007 up to this date, I have applied for several full time positions and have been denied.  Some of the positions have been 4 Accounting Instructor positions and 1 Instructor of Business.

II.  No reason has been given for denying me a full time position.

III. I believe I have been discriminated because of my sex, female, in violation of Title VII Civil Rights Act of 1964, as amended.  Also, I believe I have been discriminated against because of my disability, in violation of Americans with Disabilities Act of 1990, as amended.[10]

On May 15, 2008, plaintiff applied for two additional positions: Job 1893 — Instructor of Business Administration, and Job 1896 —

---

[8]HCCS Applicant Job History, Exhibit 13 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20.

[9]Id.

[10]EEOC Charge No. 460-2008-02200, Exhibit 21 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20, and Exhibit 19 attached to Plaintiff's Response, Docket Entry No. 27.

Instructor of Accounting.[11]  On October 1, 2008, the EEOC issued the
plaintiff a right-to-sue letter.[12]  On October 27, 2008, the Social
Security Administration issued a Notice of Award granting
plaintiff's application for monthly benefits beginning on June 1,
2008, and stating "[w]e found that you became disabled under our
rules on January 1, 2008."[13]  On December 30, 2008, plaintiff
initiated this action by filing her Original Complaint (Docket
Entry No. 1).

## II.  <u>Standard of Review</u>

    Summary judgment is authorized if the movant establishes that
there is no genuine dispute about any material fact and the law
entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about
material facts are "genuine" if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
<u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  The
Supreme Court has interpreted the plain language of Rule 56(c) to
mandate the entry of summary judgment "after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element

---

    [11]Exhibit 13 attached to Plaintiff's Response, Docket Entry
No. 27.

    [12]Exhibit 20 attached to Plaintiff's Response, Docket Entry
No. 27.

    [13]Exhibit 21 attached to Plaintiff's Response, Docket Entry
No. 27.

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.   <u>Id.</u> Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Id.</u>

### III.   <u>Analysis</u>

In her Original Complaint, plaintiff alleges that HCCS

> intentionally discriminated against [her] because of her sex and/or her disability in violation of the respective provisions of Title 42 U.S.C. by refusing to promote plaintiff to full time various faculty positions from the Adjunct Accounting Instructor's position which she has held.[14]

HCCS argues that it is entitled to summary judgment because

> Webb cannot assert a *prima facie* case for position 1627 as HCC did not select anyone for this position. Moreover, Webb cannot demonstrate that she was clearly better qualified than the applicants selected for positions 1520 and 1676.   Furthermore, Webb has no evidence of sex discrimination as HCC selected a woman for positions 1520 and 1676.   Additionally, Webb did not

---

[14]Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 8.

-5-

have a disability as defined by the ADA at the time she applied for positions 1520, 1626 and 1676.[15]

HCCS also argues that "[t]o the extent that Webb alleges claims that were not included in her EEOC Charge, those claims are barred as she failed to exhaust her administrative remedies."[16]  Plaintiff does not dispute HCCS's arguments that she is unable to establish a prima facie case of discrimination, or that she failed to exhaust her administrative remedies for all of the positions for which she applied.  Instead, plaintiff argues that HCCS's inclusion of a form in her personnel file designating her as "ineligible for rehire" was motivated by her disability and has prevented HCCS from hiring/promoting her to a full-time faculty position since then.[17]

## A.   Exhaustion of Administrative Remedies

Defendant argues that any claims plaintiff is asserting or attempting to assert for employment discrimination arising from HCCS's failure to promote/hire her for positions not identified in her EEOC charge are barred for failure to exhaust administrative remedies.[18]  The court agrees.

_____

[15]Defendant's Motion for Summary Judgment, Docket Entry No. 20, p. 2.

[16]Id. at 8.

[17]Plaintiff's Response, Docket Entry No. 27, pp. 6 and 17.

[18]Defendant's Motion for Summary Judgment, Docket Entry No. 20, pp. 8-10.

Courts may not entertain claims brought under Title VII and/or the ADA for which an aggrieved party has not first exhausted her administrative remedies by filing a charge of discrimination with the EEOC. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002), cert. denied, 123 S.Ct. 1287 (2003). See also 42 U.S.C. § 2000e-5(e)(1) (Title VII), and Henson v. Bell Helicopter Textron, Inc., 128 Fed.Appx. 387, *390-91 (5th Cir. 2005) ("The ADA incorporates by reference the two-step administrative and judicial enforcement scheme of Title VII of the 1964 Civil Rights Act. See 42 U.S.C. 12117(a). Thus, before a plaintiff may file a civil action under Title VII or the ADA, [s]he must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC."). While not viewed as a jurisdictional prerequisite, the filing of an EEOC charge "is a precondition to filing suit in district court." Taylor, 296 F.3d at 379 (quoting Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996)).

The filing of an EEOC charge triggers an investigation and a process pursuant to which voluntary compliance may be obtained and discriminatory practices and policies eliminated. Requiring the plaintiff first to state her allegations of employment discrimination in an EEOC charge serves "Congress' intention to promote conciliation rather than litigation in the Title VII context." Burlington Industries, Inc. v. Ellerth, 118 S.Ct. 2257,

2270 (1998).  Civil complaints for employment discrimination may only encompass "discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegation *during the pendency of the case before the Commission*."  <u>National Association of Government Employees v. City Public Service Board of San Antonio, Texas</u>, 40 F.3d 698, 711 (5th Cir. 1994) (emphasis in original).  Thus, the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit.

Asserting that "[i]n her EEOC charge, Webb alleges that HCC failed to hire her for four accounting instructor positions and one instructor of business position,"[19] but that in her Original Complaint plaintiff alleged that "HCC failed to hire her for 'various' full-time faculty positions,"[20] and that "[i]n her deposition, Webb testified that seven positions for which she applied were included in her lawsuit,"[21] defendant argues that since plaintiff's "charge only included five positions . . . [plaintiff] has not exhausted her administrative remedies for seven positions."[22]  Asserting that "in her Charge, Webb identifies the

---

[19]<u>Id.</u> at 8.

[20]<u>Id.</u>

[21]<u>Id.</u> at 9.

[22]<u>Id.</u>

dates of discrimination as July 1, 2007 through April 2, 2008,"[23] HCCS argues that the job positions at issue in this action are only those job positions for which the plaintiff applied between those dates.  HCCS contends that "[d]uring that time period, Webb did, indeed, apply for four accounting instructor positions and one business administration instructor position — job posting numbers 1520 (which included positions 3648, 3641 and 4006), 1627, and 1676."[24]  Thus, HCCS contends that "the only job postings that are a part of this lawsuit are 1520, 1627, and 1676."[25]

Plaintiff has not responded to HCCS' argument that she failed to exhaust her administrative remedies for any claims that she is asserting or attempting to assert based on HCCS's failure to hire/promote her to positions for which she applied before July 1, 2007, and after April 2, 2008.  Local Rule 7.4 provides:

> Failure to respond will be taken as a representation of no opposition.  Responses to motions
>
> A    Must be filed by the submission day;
>
> B    Must be written;
>
> C    Must include or be accompanied by authority; and
>
> D    Must be accompanied by a separate form order denying the relief sought.

---

[23]Id.

[24]Id. at 9-10 and HCCS Applicant Job History, Exhibit 13 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20.

[25]Id. at 10.

S.D.Tex.R. 7.4 (2000).   In accordance with Local Rule 7.4, the court takes plaintiff's failure to respond to defendant's assertion that she failed to exhaust her administrative remedies for any claims based on its failure to hire/promote her to positions other than those included in job postings 1520, 1627, and 1676, as a representation of no opposition to the legal arguments and factual evidence submitted by the defendant in support of the pending motion.   Eversley v. MBank Dallas, 843 F.2d 172, 173-174 (5th Cir. 1988) (noting that when the nonmovant submits no response, the movant's factual allegations are properly taken as true). Accordingly, the court concludes that the defendant is entitled to summary judgment on any claims that plaintiff has asserted or is attempting to assert based on HCCS's failure to hire/promote her to positions not listed in job postings 1520, 1627, and 1676 for failure to exhaust administrative remedies.

**B.   Title VII Claims**

    1.   <u>Applicable Law</u>

    Title VII of the Civil Rights Act of 1964 prohibits employers from taking adverse employment actions against employees on the basis of gender.   Plaintiffs in Title VII cases may rely on either direct or circumstantial evidence, or both.   See Machinchick v. PB Power, Inc., 398 F.3d 345, 350-52 (5th Cir. 2005); Wallace v. Methodist Hosp. System, 271 F.3d 212, 219 (5th Cir. 2001), cert. denied, 122 S.Ct. 1961 (2002).   Direct evidence is "evidence which,

-10-

'if believed, proves the fact [in question] without inference or presumption.'" <u>Fabela v. Socorro Independent School District</u>, 329 F.3d 409, 415 (5th Cir. 2003) (quoting <u>Brown v. East Mississippi Electric Power Association</u>, 989 F.2d 858, 861 (5th Cir. 1993)). "In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion served as a bases . . . for the adverse employment action." <u>Id.</u>  If a plaintiff presents direct evidence of discrimination she is allowed to bypass the burden-shifting analysis used in circumstantial evidence cases stated in <u>McDonnell Douglas Corp. v. Green</u>, 93 S.Ct. 1817 (1973).  <u>Id.</u>  The <u>McDonnell Douglas</u> burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a <u>prima facie</u> case.  93 S.Ct. at 1824.  To establish a <u>prima facie</u> case of discriminatory failure to hire/promote the plaintiff must demonstrate that (1) she belongs to a protected class, (2) she sought and was qualified for a job for which the employer was seeking applicants, (3) despite her qualifications she was rejected, and (4) the position she sought was filled by someone outside her protected class or she was otherwise not promoted because of her protected characteristic.  <u>Id.</u>  Once the plaintiff establishes a <u>prima facie</u> case, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the actions at issue.  If the defendant meets this burden, the presumption of discrimination created by the plaintiff's <u>prima</u>

facie case disappears, and the burden shifts to the plaintiff to produce evidence capable of meeting the ultimate burden of persuasion on the issue of intentional discrimination.    Id.

2.    Analysis

Plaintiff alleges that HCCS intentionally discriminated against her on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, as amended, by failing to promote her from a part-time to a full-time faculty position on five different occasions in 2007.    HCCS argues that it is entitled to summary judgment on plaintiff's claims for gender discrimination in violation of Title VII because she is unable to establish either a prima facie case of discrimination, or a genuine issue of material fact for trial regarding the truth of HCCS's legitimate, non-discriminatory reasons for failing to hire/promote her to any of the full-time faculty positions that she sought in 2007.

Citing the declaration of Don Washington, Director of Employment Services, and the exhibits referenced therein, HCCS asserts that job posting 1520 listed three Instructor of Accounting positions:  3643, 3641, and 4006.[26]  HCCS received ten applications for job posting 1520.  The applications were reviewed by a five-member screening committee chaired by Dr. Mesfin Genanaw.  Although plaintiff ranked second out of ten candidates following the

---

[26]Declaration of Don Washington, Exhibit 2 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20, ¶ 5.

screening committee's initial review of the applications, plaintiff ranked ninth out of ten applicants following the screening committee's interviews of the candidates. Only the top five ranking applicants advanced to interviews with the hiring authority, Dean Arnold Goldberg.[27] Two men and one woman were selected to fill the three Instructor of Accounting positions advertised in job posting 1520.[28] HCCS contends that the plaintiff was not selected to fill any of these three positions because the screening committee found her to be less qualified than the five applicants who advanced to interviews with Dean Goldberg.[29]

Citing the declaration of Dr. Arnold Goldberg, Dean of Workforce and Economic Development, HCCS contends that plaintiff was not selected for the Instructor of Accounting position advertised in job posting 1627 because that job posting was canceled.[30] Goldberg explains that

> [i]n 2007, another full-time faculty instructor of accounting position became available. The position was posted under requisition number 1627. During that time, however, HCC was undergoing a "Regionalization." As a result, HCC determined that position 1627, which had originally been listed and advertised as a position

---

[27]Declaration of Dr. Mesfin Genanaw, Exhibit 5 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20.

[28]See Recommendations for Employment, Exhibit 10 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20.

[29]Defendant's Motion for Summary Judgment, Docket Entry No. 20, p. 15.

[30]Id. at 5, 15-16.

-13-

located at the Southwest College, needed to be moved to another HCC campus.  As a result, the position was cancelled so that it could be reposted at its new location and the new colleges could create their own screening committees.  No applicants were selected for position 1627.[31]

Citing the declaration of Rudy Soliz, Department Chair for the Business Administration Department at the HCCS Northeast Campus and chair of the screening committee for job posting 1676, HCCS contends that the plaintiff was not selected for the Instructor of Business Administration position advertised in job posting 1676 because the position was for an instructor who would teach international business, marketing, logistics, and management, and plaintiff did not have experience in any of those fields.[32]  Soliz explains

> 5.    Twenty-six people, including [plaintiff], applied for position 1676.  In accordance with the HCC's screen-ing process, the committee reviewed each applicant's application and other submitted documentation during the paper review process.

> 6.    During the paper review process, the screening committee determined that [plaintiff] was not qualified for the position, as she did not [have] any experience in either international business, marketing, logistics, or management.  As a result, she was scored "NQ" (not qualified) and was not selected for an interview.

> 7.    During the paper review process, 18 other applicants besides [plaintiff] were scored as "NQ" and were not selected for an interview because the screening committee

---

[31]Declaration of Dr. Arnold Goldberg, Exhibit 11 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20, ¶ 8.

[32]Defendant's Motion for Summary Judgment, Docket Entry No. 20, pp. 5-6, 16-18.

determined that they did not meet the necessary minimum qualifications for the position.  This group included both men and women.

8.  Following the paper review process, the screening committee interviewed and scored the remaining seven applicants.  Based on the results of the interview scores, the committee recommended the top two ranking applicants to advance on the "short list" to the hiring authority for further review.  The screening committee determined that these two finalists, Tiffany Champagne and Christy Shell, were the most qualified out of the applicant pool.[33]

Defendant argues that plaintiff is unable to establish a <u>prima facie</u> case of gender discrimination arising from its failure to hire/promote plaintiff to any of the positions advertised pursuant to job postings 1520, 1627, or 1676 because one of the three positions filled pursuant to job posting 1520 was filled by a woman, because the position advertised in job posting 1627 was canceled and not filled by anyone, and because the position filled pursuant to job posting 1676 was filled by a woman.  Defendant argues that even if plaintiff were able to establish a <u>prima facie</u> case of discrimination, plaintiff is not able to raise a genuine issue of material fact for trial regarding the truth of HCCS's legitimate, non-discriminatory reasons for failing to hire/promote her to any of the positions she sought in 2007 because each of these positions was filled by a candidate more qualified than she.

Plaintiff has not offered any legal argument or factual evidence in opposition to the defendant's assertion that she is

---

[33]Declaration of Rudy Soliz, Exhibit 16 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 20, ¶¶ 5-8.

unable to establish a _prima facie_ case of gender discrimination based on her failure to be selected for any of the full-time faculty positions that she sought in 2007. Nor has plaintiff offered any legal argument or factual evidence from which a reasonable fact-finder could conclude that HCCS's stated reasons for its failure to hire/promote her to any of the positions she sought are not true but, instead, are pretexts for gender discrimination. The court construes plaintiff's failure to respond to defendant's arguments and evidence in support of its motion for summary judgment on her claims of gender discrimination as a representation of no opposition. _Eversley_, 843 F.2d at 173-174. Accordingly, defendant's motion for summary judgment on plaintiff's claims for gender discrimination will be granted.

**C.   ADA Claims**

1.   _Applicable Law_

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees . . . and other terms, conditions, and privileges of employment.'" _Rodriguez v. ConAgra Grocery Products Co._, 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). Plaintiff may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in _McDonnell Douglas_, 93 S.Ct. at 1817. _See Seaman v. CSPH, Inc._, 179

F.3d 297, 300 (5th Cir. 1999).  To establish a prima facie case of intentional disability-based discrimination using the McDonnell Douglas framework plaintiff must show that (1) she is disabled, has a record of being disabled, or is regarded as disabled as defined by the ADA; (2) she is qualified for the job; (3) the defendant made an adverse employment decision based on her disability; and (4) she was treated less favorably than non-disabled employees. See Gowesky v. Singing River Hospital Systems, 321 F.3d 503, 511 (5th Cir.), cert. denied, 125 S.Ct. 66 (2003).  See also Seaman, 179 F.3d at 300.  If the plaintiff makes a prima facie showing of disability-based discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  See also Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1119-21 (5th Cir. 1998).  "Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination."  Id.

    2.  Analysis

    Defendant argues that plaintiff cannot establish a claim for disability discrimination because she is unable to establish that she was disabled within the meaning of the ADA when she applied for the full-time faculty positions on which her claims are based, and because plaintiff cannot establish that the legitimate, non-discriminatory reasons that the defendant has stated for its

-17-

failure to select her for one of those positions are not true but, instead, are pretexts for disability discrimination.

Plaintiff responds that

she was hospitalized in August 2003 for symptoms associated with the onset of Multiple Sclerosis ("MS") with which she is now afflicted, and that shortly after her return to her duties, she was terminated upon pre-textual grounds. She was terminated on February 27, 2004 by HCCS with an immediately undisclosed notation that she was 'ineligible for rehire,' meaning to be rehired as a 'full-time' or regular employee with healthcare insurance.[34]

Plaintiff contends that "she was a qualified individual with a disability in February 2004, and has continued as such since, as long as the 'ineligible for rehire' ban on her fulltime employment by HCCS has remained in effect."[35]   Plaintiff explains that

[w]hen Plaintiff was secretly banned from fulltime employment in 2004, and then hired by HCCS to teach as an adjunct professor, Defendant lost its ability to plausibly claim that Plaintiff was not hired fulltime for any reason other than the "attainder" or ban on rehire. The questions then are whether the secret "ineligible for rehire" label affixed to her by Vice Chancellor Gloria Walker and her assistant Ronald DeFalco resulted from Plaintiff's onset of a progressive disability or some other legitimate and non-discriminatory cause, and whether that ban continues to be in effect. It must be presumed that Arnold Goldberg, Don Washington, and James Cross would abide by HCCS' ban on Plaintiff's fulltime rehire.[36]

---

[34]Plaintiff's Response, Docket Entry No. 27, p. 5.

[35]Id. at 6.

[36]Id.

HCCS replies that plaintiff "has not brought forth any evidence to create a genuine issue of material fact regarding her claims."[37]  HCCS explains that

> the only admissible evidence shows that HCC made the hiring decisions at issue in this case based on the applicants' qualifications and that Webb was not clearly better qualified than the applicants chosen.  Meanwhile, Webb's response focuses on her prior termination from HCC in 2004 (which is not even a claim in this suit) and whether she remained eligible for rehire following that termination.  Even if Webb was not eligible for rehire after her termination in 2004, Webb has not brought forth any evidence to show that she was ineligible for rehire due to her alleged disability or her sex.[38]

   (a)  Plaintiff's Disability Status

Plaintiff's disability status is a threshold issue.  Under the ADA a person is disabled if she (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment.  <u>Dupre v. Charter Behavioral Health Systems of Lafayette Inc.</u>, 242 F.3d 610, 613 (5th Cir. 2001).  Whether an individual suffers from a disability is determined on a case-by-case basis based on evidence that shows the effect of the impairment on the individual's life.  <u>Albertson's, Inc. v. Kirkingburg</u>, 119 S.Ct. 2162, 2169 (1999).  Whether an impairment is substantially limiting depends on its nature and

---

[37]Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment and Objections to Plaintiff's Verification (Defendant's Reply), Docket Entry No. 28, p. 1.

[38]<u>Id.</u> at 1-2.

severity, its duration or expected duration, and its permanent or expected permanent or long-term impact.  <u>Dupre</u>, 242 F.3d at 614 (citing 29 C.F.R. § 1630, App., § 1630.2(j)).  Major life activities include "'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'"  <u>Talk v. Delta Airlines, Inc.</u>, 165 F.3d 1021, 1024-1025 (5th Cir. 1999) (per curiam)(quoting 29 C.F.R. § 1630.2(I) (listing illustrative major life activities)).

### (1)   Substantially Limiting Physical Impairment

Defendant argues that plaintiff is unable to establish that she was disabled within the meaning of the ADA in 2007 when she applied for the positions at issue because she did not have a physical or mental impairment that substantially limited one or more of the major life activities.  In support of this argument defendant cites the plaintiff's deposition testimony that until 2008 the only effect her alleged disability had on her ability to engage in major life activities is that it caused her to use a rolling book bag to help her walk on campus.[39]  Defendant argues that plaintiff cannot create a genuine issue of material fact for trial on this issue merely by stating that she had her first symptomatic bout with MS in 2003, and that thereafter she began using a cane and/or rolling book bag to help her walk because such statements contradict her earlier sworn deposition testimony:

---

[39]Defendant's Motion for Summary Judgment, Docket Entry No. 20, pp. 10-11, and Exhibit 1 attached thereto at 23-25, 27-29.

Q.   Okay.  How long have you had multiple sclerosis?

A.   Since 2006.

Q.   Is that when you were -- or when were you diagnosed
     with multiple sclerosis?

A.   September 2006.

                         . . .

Q.   Okay.  And when did the MS start to affect your
     walking?

A.   Just in the last year.  That's why I switched over
     to UT.

Q.   Okay.  So it just started affecting you in 2009?

A.   2008.  I lost a whole year.  It probably start --
     no. Probably end of 2007.

                         . . .

Q.   Okay. 2007?

A.   Yes.

Q.   Okay.  And were you able to care for yourself?

A.   Yes.

Q.   Were you able to learn new skills during that time?
     I assume as a teacher, you know, you keep up on new
     developments and -- in your field.

A.   Yes.

Q.   Okay.  And so -- and you were able to walk around;
     is that right?

A.   Yes.

Q.   Okay.

A.   We're talking about 2007, right?

Q.   Right, from -- 2007.  Is that right?

                         -21-

A.   Yes.

Q.   Okay.  And then -- and what about in 2008?

A.   2008, I was pretty much using the walker.

Q.   Okay.  But during 2008, you were able to work?

A.   Yes.

Q.   And you were still able to see?

A.   Yes.

Q.   You were able to hear?

A.   Yes.

Q.   You were able to sleep?

A.   Yes.

Q.   Household chores?

A.   Yes.

Q.   Manual tasks?

A.   Yes.[40]

Uncontroverted evidence establishes that plaintiff was hospitalized in 2003 for symptoms associated with the onset of MS, and that in 2006 she was diagnosed with MS.  MS has been recognized as a chronic disease that can affect the whole body and may be severe enough to become an actionable disability.  See EEOC v. Chevron Phillips Chemical Co., LP, 570 F.3d 606, 618 (5th Cir. 2009) ("[R]elapsing-remitting conditions like multiple sclerosis,

---

[40]Defendant's Reply, Docket Entry No. 28, p. 4, and Plaintiff's Deposition, Exhibit 1 attached to Docket Entry No. 20 at 16, 24, 28-29.

epilepsy, or colitis can constitute ADA disabilities depending on
the nature of each individual case."). However, "whether an
impairment substantially limits a major life activity within the
meaning of the ADA is fact specific."). Id. at 1619. Thus, having
a diagnosis of MS is not enough; plaintiff must also establish that
she was disabled within the meaning of the ADA. Although plaintiff
testified at her deposition that she was diagnosed with MS in 2006,
the record before the court indicates that in 2007 plaintiff had no
physical or mental impairment that substantially limited her
ability to perform the duties of her job as a part-time instructor
or any other major life activity.

(2)  Record of Impairment

Plaintiff has not presented any evidence from which a
reasonable fact-finder could conclude that in 2007 she had a record
of having an impairment that substantially limited her ability to
perform any major life activity, or that even if she did, that
members of any of the screening committees that rejected her
applications for the full-time faculty positions underlying the
claims asserted in this action knew that she had such a record.

(3)  Regarded as Having an Impairment

Plaintiff's contentions that she began to experience symptoms
of MS in August of 2003, and that in February of 2004 HCCS
discharged her from her full-time administrative position and
designated her as "ineligible for rehire" due to her disability may

-23-

constitute an argument that defendant regarded her as disabled.[41]
To make a prima facie showing of disability under the "regarded as"
prong of the ADA, plaintiff must produce sufficient evidence for a
reasonable trier of fact to conclude that she

> (1) has an impairment which is not substantially limiting
> but which the employer perceives as . . . substantially
> limiting . . .; (2) has an impairment which is
> substantially limiting only because of the attitudes of
> others towards such an impairment; or (3) has no
> impairment at all but is regarded by the employer as
> having a substantially limiting impairment.

Rodriquez, 436 F.3d at 475 (quoting Bridges v. City of Bossier, 92
F.3d 329, 332 (5th Cir. 1996), cert. denied, 117 S.Ct. 770 (1997)).
See also Pegram v. Honeywell, Inc., 361 F.3d 272, 287 (5th Cir.
2004) (explaining that one is regarded as disabled "if the employer
believes 'either that one has a substantially limiting impairment
that one does not have or that one has a substantially limiting
impairment when, in fact, the impairment is not so limiting")
(quoting Sutton v. United Airlines, Inc., 119 S.Ct. 2139, 2150
(1999), superseded by statute, ADA Amendments Act of 2008, Pub.L.
No. 110-325, 122 Stat. 3553 (2008)).[42]

As evidence that HCCS designated her as "ineligible for
rehire" because of her disability, plaintiff asserts that following

---

[41]Plaintiff's Response, Docket Entry No. 27, pp. 5-6.

[42]The effective date of the 2008 amendments was January 1,
2009. The Fifth Circuit has stated that the 2008 amendments to the
ADA are not retroactive. See EEOC v. Agro Distribution, LLC, 555
F.3d 462, 469 n.8 (5th Cir. 2009).

her hospitalization in 2003 for the onset of MS symptoms she requested an accommodation in the form of a larger than normal computer monitor, and that HCCS later discharged her and designated her as ineligible for rehire.   Thus, plaintiff's only argument appears to be that the defendant regarded her as substantially limited in the ability to perform work without an accommodation. "For an employer to regard an impairment as substantially limiting [the major life activity of] work, the employer must regard an individual as significantly restricted in his ability to perform a class or broad range of jobs."   Hamilton v. Southwestern Bell Telephone Co., 136 F.3d 1047, 1051-1052 (5th Cir. 1998).   An employee "cannot succeed on the 'regarded as disabled' element of [a disability] claim when her employer never limited her job duties."   Gowesky, 321 F.3d at 508.

Plaintiff has not cited, and the court has not found, any case in which an employee's mere request for an accommodation has been held to support a claim that the employer regarded the plaintiff as disabled.   Although plaintiff argues that HCCS discharged her from her full-time administrative position in 2004 because of her disability, she has not presented any evidence from which a reasonable trier of fact could conclude that the defendant either knew that plaintiff's hospitalization was caused by symptoms that evidenced the early onset of MS, or that HCCS regarded the plaintiff's symptoms as substantially limiting her ability to work

or to perform any other major life activity.  Nor has plaintiff produced any evidence that after she asked HCCS for a large computer monitor that HCCS treated her as having a limitation by changing her job to reduce her responsibilities.

Moreover, since plaintiff admits that she discovered the form that designated her as ineligible for rehire in March of 2004, plaintiff cannot now complain about it because she failed to file a timely EEOC complaint about the designation.  To the extent that plaintiff is attempting to argue that the defendant's designation of her as ineligible for rehire is a continuing violation that is not time barred, such an argument is foreclosed by the Supreme Court's decision in National Rail Road Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2072 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

(b)  Defendant's Legitimate, Non-Discriminatory Reasons

Citing the declarations of Don Washington, Dr. Arnold Goldberg, and Rudy Soliz, defendant contends that its failure to select plaintiff for any of the full-time faculty positions that she sought in 2007 is attributable either to the fact that the positions were awarded to better qualified candidates or canceled and not filled.  Plaintiff has not offered any legal argument or factual evidence in opposition to HCCS's evidence that the full-time faculty positions the plaintiff sought in 2007 were either

-26-

canceled and not filled or filled by candidates who were better qualified than the plaintiff.  Accordingly, the court concludes that plaintiff has failed to raise a genuine issue of material fact for trial that HCCS's stated reasons for its failure to select the plaintiff for a full-time faculty position in 2007 are not true but, instead, are pretexts for disability discrimination.

3.  <u>Conclusions</u>

For the reasons explained above, the court concludes that plaintiff has failed to present any evidence from which a reasonable fact-finder could conclude that in 2007 when she sought the jobs underlying the disability claims asserted in this action that plaintiff was disabled within the meaning of the ADA, that the defendant regarded the plaintiff as disabled, that the members of the screening committees that rejected plaintiff's applications for full-time faculty positions knew that the plaintiff had a disability, or that the legitimate, non-discriminatory reasons that the defendant has stated for its failure to select plaintiff to fill any of the full-time faculty positions for which she applied were not true but, instead, were pretexts for disability discrimination.

## IV.  <u>Conclusions and Order</u>

The court concludes that HCCS is entitled to summary judgment on plaintiff's gender- and disability-based claims for discrimi-natory failure to hire/promote in violation of Title VII and the

ADA.  Accordingly, Defendant's Motion for Summary Judgment (Docket Entry No. 20) is **GRANTED.**  Because the court has not relied on any portion of the plaintiff's verified statements to which the defendant has objected, the defendant's objections to portions of the plaintiff's verified statements are **DENIED** as **MOOT**.

     **SIGNED** at Houston, Texas, on this 27th day of April, 2010.

SIM LAKE<br>
UNITED STATES DISTRICT JUDGE